02-09-411-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO.  02-09-00411-CV

 

 


 
 
 Edgar Gluck
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Philip Hadlock
 
 
  
 
 
 APPELLEE
 
 


 

 

----------

 

FROM County
Court at Law No. 1 OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

I. 
Introduction

          After
a jury trial in this landlord-tenant case, the trial court entered judgment
against Appellant Edgar Gluck and in favor of Appellee Philip Hadlock.  Gluck
contends in seven issues that the evidence is legally and factually
insufficient to support the judgment.  We affirm.

II. 
Factual Background

          In
2005, Hadlock and his wife entered into a written agreement with Gluck to lease
a home for a one year term ending August 31, 2006.[2] 
Hadlock gave Gluck notice in May 2006 that he and his wife would vacate the
property by August 31, 2006.  Hadlock testified that although they had paid
their rent for all of August, he moved the majority of their belongings from
the house on August 12, 2006.  When he left, Hadlock left their cat, several
boxes containing work files and small electronics, and a piece of artwork at
the house to be retrieved before the end of the month.  However, when Hadlock’s
sister-in-law Claire Murray went to the house on August 13 or 14 to retrieve
the cat, there was only a “small grouping of personal articles in the middle of
the living room”; the artwork was not in the house, and Hadlock’s other
belongings had been placed at the curb.  Hadlock then began calling Gluck and
finally spoke with him on August 16.  Gluck admitted to Hadlock that he had
entered the house and placed the items by the curb and that he intended to
immediately lease the property to a new tenant.  Hadlock testified that he
called the house later in August and that another person answered.  Hadlock
testified that he felt that Gluck had prohibited him from returning to the
property because someone else was living there.

          Hadlock
testified that he sent a letter to Gluck on August 17, 2006, requesting return
of the $750 security deposit and including his forwarding address.  He also
testified that his wife sent Gluck a letter in June 2007 containing the same
forwarding address and again requesting the return of the security deposit. 
Gluck admitted at trial that Hadlock was entitled to the refund of his security
deposit and that he had Hadlock’s address before the lawsuit was filed.  Gluck
also testified that he sent a check to Hadlock’s wife in September 2006, but he
said that the check was never cashed so he stopped payment on it.  Although
Gluck testified that he provided the stop payment to his attorney, the stop
payment was not offered into evidence at trial.  In addition, Hadlock’s counsel
cross-examined Gluck with questions suggesting that the check Gluck claimed to
have sent to Hadlock’s wife had been written much later than the date reflected
on the check.

          The
jury returned a unanimous verdict for Hadlock with specific findings that
Hadlock or his wife provided a forwarding address in writing to Gluck; that
Gluck acted in bad faith by retaining Hadlock’s security deposit; that Gluck
intentionally prevented Hadlock from entering the house on or before August 31,
2006; that Gluck removed Hadlock’s artwork from the property without Hadlock’s
permission; that the sentimental value of the artwork was $2,000; and that Hadlock
should recover $10,000 in reasonable and necessary attorneys’ fees.  The trial
court signed a final judgment for Hadlock on August 28, 2009, and this appeal
followed.

III. 
Discussion

          In
seven issues, Gluck contends that the evidence is insufficient to support the
jury’s findings that he intentionally prevented Hadlock from entering the
house, that Hadlock or his wife provided him with a forwarding address, that he
acted in bad faith by retaining Hadlock’s security deposit, that the
sentimental value of Hadlock’s artwork is $2,000, and that Hadlock’s reasonable
and necessary attorneys’ fees are $10,000.

A. 
Standards of Review

In
determining whether there is legally sufficient evidence to support the finding
under review, we must consider evidence favorable to the finding if a
reasonable factfinder could and disregard evidence contrary to the finding
unless a reasonable factfinder could not.  Cent. Ready Mix Concrete Co. v.
Islas, 228 S.W.3d 649, 651 (Tex. 2007); City of Keller v. Wilson,
168 S.W.3d 802, 807, 827 (Tex. 2005).  Anything more than a scintilla of
evidence is legally sufficient to support the finding.  Cont’l Coffee Prods.
Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996); Leitch v. Hornsby,
935 S.W.2d 114, 118 (Tex. 1996).  We may sustain a legal sufficiency challenge
only when (1) the record discloses a complete absence of evidence of a vital
fact; (2) the court is barred by rules of law or of evidence from giving weight
to the only evidence offered to prove a vital fact; (3) the evidence offered to
prove a vital fact is no more than a mere scintilla; or (4) the evidence
establishes conclusively the opposite of a vital fact.  Uniroyal Goodrich
Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998), cert. denied,
526 U.S. 1040 (1999); Robert W. Calvert, "No Evidence" and
"Insufficient Evidence" Points of Error, 38 Tex. L. Rev. 361,
362–63 (1960).

When
reviewing an assertion that the evidence is factually insufficient to support a
finding, we set aside the finding only if, after considering and weighing all
of the evidence in the record pertinent to that finding, we determine that the
credible evidence supporting the finding is so weak, or so contrary to the
overwhelming weight of all the evidence, that the answer should be set aside
and a new trial ordered.  Pool v. Ford Motor Co., 715 S.W.2d 629, 635
(Tex. 1986) (op. on reh’g); Garza v. Alviar, 395 S.W.2d 821, 823 (Tex.
1965).

B. 
Exclusion from the House

          Gluck
contends in his first issue that there is no evidence to support the jury’s
finding that he intentionally prevented Hadlock from entering the house.  Texas
Property Code section 92.0081 prohibits a landlord from “intentionally
prevent[ing] a tenant from entering the leased premises except by judicial
process” unless one of three exceptions applies.  See Tex. Prop. Code
Ann. § 92.0081(b) (Vernon Supp. 2010).  Gluck does not contend that one of
the three exceptions applies.

          Gluck
argues that there is no evidence that Hadlock was physically prevented from
entering the premises or that Hadlock even attempted to enter the premises
after August 14.  Gluck also points to evidence that he did not change the
locks to the house, that Hadlock retained a garage door opener well beyond the
lease termination date, and that Gluck did not lease the house to a new tenant
until the third week of September.  But the jury heard conflicting testimony
about Hadlock’s access to the house.  For example, the jury heard testimony
that Gluck had entered the house between August 12 and August 14 without
Hadlock’s permission and moved Hadlock’s personal items to the curb, that Gluck
told Hadlock on August 16 that Gluck would immediately lease the house, that
someone answered the telephone when Hadlock called the house later in August,
and that Hadlock felt he could not return to the property because someone else
was living there.

          “The
jury is the sole judge of the credibility of witnesses and the weight to be
given their testimony.”  In re Boatman, 266 S.W.3d 80, 86 (Tex.
App.—Fort Worth 2008, no pet.).  Thus, the jury was free to assign more weight
to Hadlock’s testimony and conclude that Gluck intentionally prevented
Hadlock’s access to the house by reletting it to another tenant before
Hadlock’s lease term had expired.  Applying the appropriate standards of
review, we hold that there is legally and factually sufficient evidence to
support the jury’s finding that Gluck intentionally prevented Hadlock from
entering the leased premises.  See Cent. Ready Mix Concrete Co.,
228 S.W.3d at 651; Pool, 715 S.W.2d at 635.  We overrule Gluck’s first
issue.

C. 
Retention of Security Deposit

          Gluck
argues in his second and third issues that the evidence is legally and
factually insufficient to support the jury’s findings that Hadlock provided him
with a forwarding address and that he acted in bad faith by retaining Hadlock’s
security deposit.

          A
landlord is obligated to return a tenant’s security deposit or provide a
written description of damages and charges once the tenant provides the
landlord with a written statement of the tenant’s forwarding address.  Tex.
Prop. Code Ann. § 92.107(a) (Vernon 2007).  In addition, a landlord who retains
a security deposit in bad faith “is liable for an amount equal to the sum of
$100, three times the portion of the deposit wrongfully withheld, and the
tenant’s reasonable attorney’s fees in a suit to recover the deposit.”  Id.
§ 92.109(a) (Vernon 2007).  It is the landlord’s burden to prove that the
retention of the security deposit was reasonable.  Id. § 92.109(c).

          Hadlock
testified that he sent a letter containing his forwarding address to Gluck on
August 17, 2006, by certified mail.  Hadlock testified that he lost the return
receipt and that he did not retain a signed copy of the letter; the copy
admitted at trial was printed from Hadlock’s computer.  Hadlock also testified
that his wife sent a letter to Gluck’s attorney in June 2007 containing the
same forwarding address.

Gluck
admitted that Hadlock was entitled to have the security deposit returned, but
he denied receiving the August 17, 2006 letter and testified that he sent
Hadlock’s wife a check for the security deposit in September 2006.  Gluck
testified, however, that he issued a stop payment on the check after Hadlock’s
wife failed to cash it, and although Gluck testified that he provided the stop
payment to his attorney, the stop payment was not offered into evidence at
trial.  Moreover, the jury heard Hadlock’s attorney cross-examine Gluck with
questions suggesting the check to Hadlock’s wife was written much later than
the date reflected on the check.

Again,
the jury heard conflicting evidence concerning the security deposit, and the
jury is the sole judge of the credibility of the witnesses.  See Boatman,
266 S.W.3d at 86.  We are not free to substitute our own judgment for that of
the jury.  See Mar. Overseas Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex.
1998).  Applying the appropriate standards of review, we hold that legally and
factually sufficient evidence supports the jury’s findings that Hadlock or his
wife provided a forwarding address to Gluck and that Gluck retained the
security deposit in bad faith.  See Cent. Ready Mix Concrete Co.,
228 S.W.3d at 651; Pool, 715 S.W.2d at 635.  We overrule Gluck’s second
and third issues.

D. 
Sentimental Value of Artwork

          Gluck
contends in his fifth issue that the trial court erred by instructing the jury
that sentimental value was the proper measure of damages for Hadlock’s artwork,
and he argues in his fourth issue that the evidence is legally and factually
insufficient to support the jury’s finding that the sentimental value of the
artwork is $2,000.

1.   
 Preservation of Jury Charge Complaint

Gluck
argues that the trial court erred by instructing the jury that sentimental
value is the appropriate measure of damage for the loss of Hadlock’s artwork. 
However, the reporter’s record on appeal does not include a transcription of
the charge conference.  Gluck therefore failed to preserve his fifth issue for
appellate review, and we overrule it.  See, e.g., Adams v. Liberty Mut. Ins.
Co., No. 01-09-00178-CV, 2010 WL 143450, at *4 (Tex. App.—Houston [1st
Dist.] Jan. 14, 2010, no pet.) (mem. op.); Ortiz v. Martinez, No.
01-05-00984-CV, 2007 WL 1441042, at *3 (Tex. App.—Houston [1st Dist.] May 17,
2007, no pet.) (mem. op.).

2.   
 Sufficient Evidence of Sentimental Value

          Sentimental
value is “the reasonable special value of [the lost] articles to their owner
taking into consideration the feelings of the owner for such property.”  Brown
v. Frontier Theatres, Inc., 369 S.W.2d 299, 305 (Tex. 1963).  “The owner’s
feelings thus help determine the value” of the lost or damaged item.  City
of Tyler v. Likes, 962 S.W.2d 489, 497 (Tex. 1997).

          Hadlock
testified that the artwork was a sculpture on a wood base; that it was
approximately eighteen inches tall; and that it was a mixed media piece in a
semi-representational style, meaning that it was partly abstract and partly
recognizable.  Hadlock also testified that he had been developing it during the
preceding year, that he had invested about 500 hours into making it, and that
the artwork was “extremely important” to him.  He said that it was important
because of the time invested, because he planned to submit it to an agency in
Paris in order to establish himself with the agency, and because he believed
that it represented his abilities very well.  Finally, Hadlock testified that
he had looked at similar works at the Paris agency and that he believed his
artwork was worth $2,000.  Gluck offered no evidence to rebut Hadlock’s
testimony.

          Applying
the appropriate standards of review, we hold that legally and factually
sufficient evidence supports the jury’s findings that Hadlock’s artwork has a
sentimental value of $2,000.  See Cent. Ready Mix Concrete Co.,
228 S.W.3d at 651; Pool, 715 S.W.2d at 635; see also Garey Constr.
Co., Inc. v. Thompson, 697 S.W.2d 865, 867 (Tex. App.—Austin 1985, no pet.)
(holding evidence sufficient to sustain award for intrinsic value of trees and
stating that testimony of a specific dollar amount “is not required in a case
involving loss of intrinsic value of property” because “[a]ny value for
intrinsic loss must be left to the jury”).  We overrule Gluck’s fourth issue.

E. 
Attorneys’ Fees

          In
his sixth and seventh issues, Gluck contends that the award of $10,000 in
attorneys’ fees is excessive and that the evidence is legally and factually
insufficient to support the award.

“The
reasonableness of attorney’s fees is ordinarily left to the factfinder, and a
reviewing court may not substitute its judgment for the jury’s.”  Smith v.
Patrick W.Y. Tam Trust, 296 S.W.3d 545, 547 (Tex. 2009).  To determine the
reasonableness of a fee, the factfinder should consider:

(1) the time and
labor required, the novelty and difficulty of the questions involved, and the
skill required to perform the legal service properly;

 

(2) the likelihood . .
. that the acceptance of the particular employment will preclude other
employment by the lawyer;

 

(3) the fee
customarily charged in the locality for similar legal services;

 

(4) the amount
involved and the results obtained;

 

(5) the time limitations
imposed by the client or by the circumstances;

 

(6) the nature and
length of the professional relationship with the client;

 

(7) the experience,
reputation, and ability of the lawyer or lawyers performing the services; and

 

(8) whether the fee is
fixed or contingent on results obtained or uncertainty of collection before the
legal services have been rendered.

 

Arthur
Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 818 (Tex. 1997)
(citing Tex. Disciplinary R. Prof. Conduct 1.04, reprinted in Tex. Gov’t Code,
tit. 2, subtit. G app. (State Bar Rules, art. X, § 9) (Vernon Supp. 2010)).

Gluck
first contends that there is no evidence Hadlock actually incurred any
attorneys’ fees because his lawyer had agreed not to charge him.  However, “[t]he
existence of a fee contract and proof of fees actually incurred or paid are not
prerequisites to the recovery of attorney’s fees in Texas.”  AMX Enters.,
L.L.P. v. Master Realty Corp., 283 S.W.3d 506, 520 (Tex. App.—Fort Worth
2009, no pet.); see also Brown v. Comm’n for Lawyer Discipline, 980
S.W.2d 675, 684 (Tex. App.—San Antonio 1998, no pet.) (affirming award of
attorneys’ fees to attorneys representing the Commission pro bono).  Thus, the
pro bono representation by Hadlock’s counsel does not prohibit the recovery of
attorneys’ fees.

Gluck
also contends that the award of attorneys’ fees is excessive because Hadlock’s
counsel agreed that the amount of fees was not typical for a landlord-tenant
case, because Hadlock’s attorneys’ fees were more than twice the amount of
Gluck’s attorneys’ fees, and because Hadlock’s counsel failed to segregate the
time spent prosecuting claims for which fees are not recoverable. However,
Hadlock’s counsel did testify about segregated fees.  Specifically, Hadlock’s
counsel testified that a reasonable fee in his opinion would be $12,895 but
that a reduction “probably in the range of ten percent” was necessary because
some of the time billed “was spent on claims for which attorneys’ fees are not
recoverable.”

In
addition, Hadlock’s counsel testified that the fees are based on an hourly rate
of $200, that he has been practicing law for five years in Dallas County and
Tarrant County, that the total amount of fees is reasonable, that much of the
time was spent attending court for numerous motions that were filed and a
deposition noticed by Gluck, and that a reasonable fee for the case—taking the
segregation of non-recoverable fees into account—is $10,000.  On
cross-examination, Hadlock’s counsel agreed that most landlord-tenant cases are
“resolved fairly quickly” and do not typically involve fees near $10,000 but
that the fees sought “were really actually kind of low” based on what had to be
done in this case.  Thus, Hadlock’s counsel testified about four of the eight Arthur
Anderson factors.  See Arthur Andersen & Co., 945 S.W.2d
at 818; see also AMX Enters., L.L.P., 283 S.W.3d at 520 (discussing
uncontroverted evidence of four of eight Arthur Anderson factors).

Finally,
even though the $10,000 attorneys’ fee award exceeds the damages awarded and
the fees charged by Gluck’s counsel, these do not necessarily render the award
of $10,000 excessive.  Hadlock’s attorney testified about the services required
given the unique circumstances of this case.  See Bank of Tex. v. VR Elec.,
Inc., 276 S.W.3d 671, 685 (Tex. App.—Houston [1st Dist.] 2008, pet. denied)
(affirming $30,000 attorney fee award in case involving $7,035.26 in actual
damages); Cordova v. Sw. Bell Yellow Pages, Inc., 148 S.W.3d 441, 445–49
(Tex. App.—El Paso 2004, no pet.) (affirming fee award of $18,007 in case
involving $7,092.18 in actual damages); see also Norris v. Jackson, No.
02-09-00265-CV, 2010 WL 4261541, at *10–12 (Tex. App.—Fort Worth Oct. 28, 2010,
no pet.) (mem. op.) (affirming award of $27,500 in attorneys’ fees in case
involving $9,000 in damages).

          Applying
the appropriate standards of review, we hold that legally and factually
sufficient evidence supports the award of $10,000 in attorneys’ fees.  We also
hold that the award of $10,000 in attorneys’ fees is not excessive.  See
Cent. Ready Mix Concrete Co., 228 S.W.3d at 651; Pool, 715 S.W.2d
at 635; Bank of Tex., 276 S.W.3d at 685; Cordova, 148 S.W.3d at
445–49.  We overrule Gluck’s sixth and seventh issues.

IV. 
Conclusion

          Having
overruled each of Gluck’s seven issues, we affirm the trial court’s judgment.

 

ANNE GARDNER
JUSTICE

 

PANEL: 
GARDNER,
MCCOY, and MEIER, JJ.

 

DELIVERED: March 17, 2011









          [1]See
Tex. R. App. P. 47.4.





[2]Hadlock’s wife is not a
party to the lawsuit.